CHANCERY.

## Tevis's representatives vs. Richardson's heirs &c.

Case 137.

Appeal from the Madison Circuit; GEORGE SHANNON, Judge.

*Specific performance. Time. Possession. Title. Decrees against unknown heirs. Femes Covert.*

December 2.

Bill for specific performance.

Judge MILLS delivered the opinion of the court.

THIS is a bill in equity, brought by the heirs of Aaron Richardson against the heirs and executors of Robert Tevis deceased, to enforce the purchase of a tract of land.

Contract for the sale of the land descended from Richardson, made by his four sons and two *sons-in-law* to Tevis.

Richardson died in possession of the land, a number of years before the sale; and on the 26th day of July, 1821, his heirs set up the land at public auction, and Robert Tevis became the purchaser, at the price of $13 31¼ per acre, the number of acres being about 146, and executed to said heirs separate notes for the purchase money, payable in one year. Each note expressed on its face that it was executed for the land, and that a title was to be made to the land on the payment thereof. The heirs of Richardson were six in number, four of them were males, and two were married women. The male heirs and the two husbands of the females executed to Tevis their contract or title bond, binding them to make a good and sufficient deed for the land when the purchase money was paid.

Part of Richardson's heirs bring their

It is stated by the parties that, after the notes fell due, suits at law were brought thereon, and the defendants, the heirs and executor of Robert Tevis, (he

having departed this life,) pleaded the non perform- ance of the condition mentioned in each note, to-wit: the not making of a title, and the heirs of Richardson failing in the issue, suffered a nonsuit. The records of these suits at law are, however, not filed. On the 3d of March, 1824, two of the heirs of Richardson and the husband of a third, (his wife having died in the mean time,) brought this bill to enforce the contract specifically, making the rest of the heirs of Richardson, as well as the executor and heirs of Robert Tevis and others, defendants.

Tivis' rep's
vs.
Richard-
son's hs &c.
———
bill against
the other
parties for
execution of
the contract.

The heirs and executor of Robert Tevis resist the specific performance of the contract on various grounds. One is, that the land was sold for paper of the Bank of the Commonwealth, but the notes were drawn, through ignorance, inadvertance or mistake, for dollars only, omitting the expression of bank paper, and that the vendors had refused to receive the paper; and another ground is an entire defect of title in the vendors, and an inability to make such title as a court of equity ought to compel them to take.

Grounds of
defence to
the bill by
the represent-
atives of
Tevis.

The court below decreed a specific performance entirely, and from that decree the heirs and executor of Robert Tevis have appealed to this court.

Decree of the
circuit court
for the exe-
cution of the
contract, and
appeal.

We conceive a specific performance of the contract ought not to have been decreed under the circumstances of this case.

The history given of the title, is, that a patent issued to John Tanner, for the land, in 1785; that Tanner sold it to Nathaniel Hart, in his life time, but no conveyance is shewn to have existed from Tanner to Hart. Tanner, long since, as the bill alleges, left the state, and is dead, and his heirs, except one of them, are unknown. His known heir and his unknown heirs are made defendants. Hart died, and left the estate to numerous heirs, who are also made defendants. It is alleged that the heirs of Hart made partition, and the land in question fell, in the partition, to two of them, Richard and Cumberland Hart, to whom the rest of the heirs conveyed by deed of partition, but no such deed is shewn.

History of
the title of
Richardson's
heirs.

TEVIS' rep's
vs.
RICHARD-
SON's hs &c.

It is stated, that Richard and Cumberland Hart sold and conveyed the land to Tyree Oldham. Oldham is made defendant, and although a recorded conveyance to him from Richard and Cumberland Hart is alleged, yet it is not produced. It is further stated, that Tyree Oldham had sold and conveyed to Aaron Richardson, the ancestor of the complainants, by a recorded deed, but no such deed is produced. Oldham, however, is made defendant, and does not resist a conveyance, neither do the rest of the defendants through whom it is stated the title has passed.

Equity will not enforce a purchase, where the vendor cannot recover at law, except where the complainant shews a sufficient excuse for his failure, or that his forfeiture of his contract at law had been waived by the vendee.

After all these defects of title, it would be difficult to sustain a bill on the part of the vendors for a specific performance, notwithstanding all the intervening claimants in the chain of title are made parties, and do not resist it, when that bill is brought for the first time about two years after the contract ought to have been fulfilled. Regularly, the vendors ought to have been ready at the time of the conveyance and payment to furnish their abstract of title, such as their contract required, and to have offered a conveyance. This, at all events, was necessary to give the vendors a right to recover on the contract in a court of law, and generally where the party has no right of action at law, a court of equity will not interfere to enforce a contract, unless there have been some circumstances excusing the failure at law, or waiving the forfeiture on the part of the vendor. Here there are no such circumstances on the part of the vendor, or his heirs.

Proposition of the vendee to take the title, such as it was, if the vendor would receive payment in the depreciated currency, not having been acceded to, given no effect.

It is true that it is shewn that Tevis said he would take the title as it was and carry the contract into effect, if the vendors would take the common currency of the country, which was the depreciated paper of the banks, and which he contended was to be the medium of payment. But at the same time used expressions shewing that he understood that the title of the vendors was defective and that his contract entitled him to a clear title, and that he would not waive any of the defects, if the currency was not accepted.

It is true that it is often said that time is not es-

tcemed in equity the essence of a contract. But it ought not to be understood from this, that time is to be disregarded, whenever the loss of it can work an injury, especially where the parties have made the contract materially dependant, and remedies at law are gone, and there is no waiver of the forfeiture at law.

It is, however, insisted that the possession here is with Tevis and his heirs and has not been disturbed. But this of itself is not sufficient to waive the forfeiture, especially as he resisted before the hour that the contract fell due, and ever since, both in the actions at law and in the intercourse between the parties, the fulfilment of the contract, as the other party construed it. For this possession, if the land belongs to the vendors, the laws will give them ample redress. It is not an irreparable injury, but can be compensated.

It might be a question of some moment whether a court of equity, when a good and sufficient title is stipulated to be given, ought to compel a vendor to accept a title derived through a proceeding in chancery against unknown heirs.

It is an *ex parte* proceeding, and liable to be assailed in many ways, and must therefore be strictly pursued, as it goes against a defendant by not a very definite description of character, without even naming him, when his name is given to identify him. If there be a will, and the title has gone to a devisee as such, or is held by purchase and not by descent, the proceeding against the unknown heirs, it is evident, cannot be effectual.

But without being understood to express any positive opinion on this point, there are greater difficulties. For however the general rule may be, it is evident that the proceedings here do not conform to the statute. There is no oath by the party filing the bill against unknown heirs, that their names are to him or them unknown, but the oath is made by a stranger to the controversy, and not nearer connected with it, than as counsel in the cause, that he verily believes that the names of these heirs were un-

### Margin notes

Tevis' rep's
vs.
Richardson's h's &c.

Time may be material where the contract is mutually dependent, and the remedy at law is not lost, and the forfeiture not waived.

Possession by vendee, not of course a waiver of vendor's forfeiture of his contract by his failure to convey.

Query: whether a purchaser can be compelled to accept a title obtained by a decree ag'st unknown heirs.

Where the land had been devised or conveyed, the decree against unknown heirs is nought.

That the decree against unknown heirs, is erroneous; for the lack of the affidavit is an objection to the title thus obtained.

Tevis' rep's
vs.
Richard-
son's hs &c.

known to his clients. It has been held by this court that the want of the proper oath does not render such proceedings void; but still they are evidently voidable and may be reversed for this defect, and hence, the title forced upon the purchaser is liable to be assailed and destroyed by the acts of another defendant over whom he has no control.

Printer's certificate, after the appearance day for the absent defendant, stating the order had been published 9 weeks, not saying when, is insufficient, and the decree void.

There is another apparent defect in the proof of the order of publication here, which is calculated to render these proceedings against the unknown heirs, not only voidable, but void. The order was made at the March term, 1824, requiring the defendants to appear on the first day of the next June term, which was the first Monday of the succeeding June. The certificate of the printer, states that the insertion was made for nine weeks successively, but it does not state when the nine weeks commenced, or when they ended, and his certificate is dated on the 11th of the following June, so that the certificate would have been equally true, if the last of these insertions had been made after the appearance day, as if made before. Nothing ought to be presumed in favor of such ex parte proceedings, and they have ever been held to considerable strictness in the court. This proceeding against the unknown heirs are not therefore deemed sufficient to authorize the enforcing of the title upon the vendee.

Purchaser cannot be compelled to accept a title made out by presumption from length of possession held by vendors under executory contracts.

One ground relied on by the complainants as rendering the title indefeasable, and such as ought to be accepted by the vendee, is, that the possession of the land under Tanner's grant has been held somewhat upwards of twenty years, and therefore time has completed the title. It is true that this raises a considerable presumption in favor of the vendors, that there has been a conveyance or some writing, or permission to occupy the land; but still we cannot deem the proof sufficient to say, that the title is complete thereby.

Effect of possession in perfecting and proving titles to land: pur-

If the danger to this possession arose from adverse interfering claims, and it was shewn that the land remained vacant until possessed by Tanner, and those who claimed under him, and there were no exceptions in favor of claimants within the disabili-

ties of the statute, such possession of twenty years under one statute, or seven years under another, might give a complete title; because no person could recover in a writ of right after the twenty years had expired, unless a previous, actual seizin was proved according to the settled course of adjudication in this court. But here the danger is from the same title, and it has been held by this court that where a tenant holds by executory contract still looking to the legal title holder for a completion of his title, and the relation exists of vendor and vendee, with an incomplete estate, then the statute does not run. It requires a conveyance to authorize the vendee to hold adversely against all the world especially his own vendor, and such a conveyance cannot certainly be presumed. The description of the heirs of Tanner is not given except one, and she is a *feme covert*, of course one of them is within the disabilities of the statute, and when these heirs are rightfully proceeded against they are not precluded from shewing circumstances sufficient to rebut the presumption of a conveyance. Of this danger the vendee, who is to have a good and sufficient title, ought not to be compelled to run the risk by a decree in chancery made in a suit for specific performance, brought years after the contract ought to have been fulfilled.

There is also another defect existing in the sale from the heirs of Richardson to Robert Tevis, which we apprehend is incurable and ought to be held conclusive against a decree for specific performance.

The sale as to two sixths of the land was made, and the title bond given, by the husbands of the female heirs alone. The females did not sell, and they could not do so, unless by privy examination as the law requires, and that has not been done. King and wife, one of these females, are made defendants, to compel her to convey. We do not conceive that the chancellor ought to specifically enforce a sale of the wife's land in fulfilment of the contract of the husband alone. If he does, it ought to be under some circumstances of her consent, granted on record similar and equivalent to a privy examination.

Tevis' rep's
vs.
Richard-
son's hs &c.
———————
Equity never
has coerced
the wife to
relinquish her
right of dow-
er.

Equity will
not aid the
husband to
get possession
of any of the
wife's choses
in action,
without pro-
viding for
her.

Infant chil-
dren of the
deceased wife
cannot be di-
vested of the
fee in lands
descended on
them from
their mother,
to fulfil their
father's con-
tract.

Effect of the
vendee's ac-
ceptance of a
deed of con-
veyance, in
fulfilment of
the contract,
as a waiver of
vendee's ob-
jection to the
title.

An instance has not been known of a chancellor decreeing away the dower of the wife, and compelling her to relinquish it in fulfilment of the contract of the husband, and we are not aware that his powers are greater over the wife when she holds the estate, than when she holds the contingent estate of dower only.

Besides, the wife holds her interest notwithstanding the marriage, and even in estate in which the husband acquires the absolute interest by the marriage, if it has never been reduced to possession, the chancellor will frequently refuse to aid the husband in regaining the possession unless a suitable provision is made for the wife, placed beyond the control of the husband; and this has been done in this court even where the rights of creditors are concerned. It follows, therefore, conclusively, that the chancellor ought to take care how he decrees away the wife's legal estate, encumbered by the marriage in fulfilment of the contracts of the husband.

What makes the matter worse in this case, is, after the sale by the husband of one of these married females, she departed this life, leaving two infant children. The husband united in this suit, and requires of the chancellor to decree away the estate of the infant heirs of his wife, whom he makes defendants in fulfilment of his own contract, and not in compliance with the contract of the mother. Such a decree cannot be rendered against them, or against the surviving female, and if rendered would be reversible at their writ, so soon as their respective disabilities were removed, and therefore the vendee ought not to be compelled to accept a title under such a decree.

The only cure to all this, attempted on the part of the complainants, is, that before the title was to have been made, they executed a conveyance and had it properly acknowledged in the clerk's office, and that it was accepted by Robert Tevis in his lifetime, through the instrumentality of his son as his agent. If this allegation was true it would go far to defeat the jurisdiction of a court of equity, and would render it hard to account for a defeat at law. If the

title was absolutely made and accepted there would be no need for the chancellor to interfere, except to enforce the lien; for it is to enforce liens, or enforce contracts specifically, that the chancellor will take the entire control over such contracts for the sale of lands.

But here the proof fails and does not prove the acceptance of the deed. The son tendered the amount due in bank paper to one of the complainants who had the deed in the clerk's office acknowledged as hereafter described. The paper was refused and so was the deed, which shews no more, than that the vendee was willing to waive the defects of title, if the controversy relative to the acceptance of bank paper was waived on the other side, and this coincides with the language of the vendee afterwards, that they had made him a deed which he would not accept, if they would not accept the payment in bank paper.

The deed is produced, and has some minutes on it made by the clerk, and is not recorded, because it was not accepted as explained by the testimony of of the clerk, in accordance with the usage of the office, not to record a deed, unless it was first accepted. These minutes made by the clerk are abbreviated notes, from which he was afterwards to draw out the acknowledgment in words at length, which, when explained by him, amount to the fact, that the deed was acknowledged by the males, and that the females relinquished their dower. How clerks have got into the habit of certifying that *femes covert* have relinquished their dower or title, instead of certifying the fact that they have acknowledged after being privily examined as the law directs, a deed, which by its terms in law passes their estate, we cannot tell; but if it be conceded that the certificate of the clerk, stating that the *feme* relinquished her dower, must be construed to pass her dower, if any she has, it certainly cannot be contended that her relinquishing her dower, passed the estate when the fee simple is in her. This can be done only by certifying that she acknowledged the conveyance in the terms pointed out in the statute. This deed there-

fore did not pass the title of *two sixths* of the land, except such title as the husbands acquired by the marriage, and it was right in Tevis, for this defect, if no other to reject it, and it was erroneous in the court below, to decree that this conveyance should stand as a good conveyance of the title of the land, as to the heirs of Tevis, as was done by the decree.

We therefore conclude that no relief ought to have been granted the complainants in the court below, as to the executor and heirs of Tevis, and that as to them, the bill ought to have been dismissed with costs.

As to the other parties concerned, the complainants may be able to show on the same bill, if preferred as their suit ought to be, that they are entitled to a conveyance, especially as they have ground from length of time, for some presumption in their favor; and on the return of the cause, as the decree must be reversed, they ought to be left at liberty to proceed thereon, by a new preparation against the other defendants, if they should deem it proper for the purpose of procuring a title from the heirs of the patentee.

The decree must therefore be reversed, with costs, in favor of Tevis' heirs and executor against the complainants below, and the cause be remanded, with directions to dismiss the bill as to Tevis' heirs and executor, with costs, and for new proceedings against the defendants not inconsistent with this opinion, and the rules and usages of a court of equity.

*Turner* for appellants; *Caperton and Breck* for appellees.